THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES DURHAM, Defendant-Appellant.

(No. 69-176;

Fifth District—April 16, 1971.

Wiseman, Shaikewitz & McGivern, of Alton, for appellant.

R. W. Griffith, Jr., State's Attorney, of Edwardsville, (John Dale Stobbs, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by Defendant Durham from a jury verdict and judgment finding him guilty of the armed robbery of Cliffie Robertson at Venice, Illinois, on February 20, 1969. The defendant was jointly indicted with three other persons. One of these, Ernie Mentola, was tried with Durham and also convicted. Mentola's conviction was appealed to the Illinois Supreme Court which upheld his conviction in an opinion entered of record on March 16, 1971. *People v. Mentola*, No. 42916.

The victim of the robbery, Mrs. Cliffie Robertson, aged 71, testified that sometime after midnight on February 20, 1969, four persons entered the rear of her home where she resided with her 100 year old husband and 57 year old retarded son. She had returned home that day from a three week hospital stay and was up taking medicine when the men appeared. Three of the men carried pistols and one of them slapped her with a pistol and knocked her against the wall dislodging her glasses. They threatened to kill everyone and burn down the house unless they were given money. For four hours the men ransacked the house while holding the Robertsons at gunpoint. When the robbers left, they taped the hands and feet of their victims.

Mrs. Robertson testified that the robbers took some clothes, an old shot-

gun with hammers, a rifle, some "old-time" straight razors and approximately $200.00 in cash. The cash included $20.00 in tobacco-stained Kennedy half-dollars which were the property of her son.

The bedroom in the three-room house was adequately lit with a bare electric bulb suspended from the ceiling. However, Mrs. Robertson was unable to clearly describe the robbers. She described them as young; two with blonde hair and two with dark hair. One of the dark haired men was short and heavy and "dark as some Mexicans". The other dark haired man was slender and "more like an Indian". One of the blonde men was "shorter than the other one", and was young, about 15 or 16 years old. Mrs. Robertson was unable to make an in-court identification of defendant Durham.

Gary Stark, an alleged accomplice, testified that on the evening of February 19, 1969, he and Mentola were riding around in Mentola's car. During the evening they met Durham and two other individuals named Albert Tolbert and Thomas Meherer. Tolbert and Meherer had blonde hair. Durham and Mentola discussed a place to rob in Venice where the people were "pretty old". Stark drove to Venice, parked the car and his four passengers got out. It was dark and after midnight. He fell asleep and was awakened by the return of the other four. One was carrying a shotgun and another a rifle. They also had some clothes and money of which Stark received a "couple of dollars". He drove away and let the others off at designated places. Stark then drove to the parking lot of his place of employment where he slept until he reported to work.

Mary Garcia was called as a witness for the State. She ran a pool hall and testified that on February 20, 1969, Tolbert and Durham were in her place of business. She stated they offered to sell her three straight razors which she identified as the razors also identified by Mrs. Robertson and admitted into evidence. She stated Tolbert spent some Kennedy half-dollars there which had a dark stain on them. She was not allowed to testify as to anything she overheard Durham say at that time, which at a hearing in chambers was offered by the State to be to the effect that she "overheard Durham admit in her place of business, a pool hall, that he was involved in the Robertson robbery; that if Mr. Robertson had been thirty years younger there would have been a rough time; that he told one Tolbert to get rid of the items taken, and that she saw certain items that were taken from the Robertson home".

■■ Defendant complains of the inability of Mrs. Robertson to make an in-cout identification of him as being one of the robbers in her home. This issue was also raised in *Mentola, supra,* and we follow that Court's disposition of this point. The court stated:

"Defendant next contends that he was not proved guilty beyond a rea-

sonable doubt because the State lacked sufficient evidence identifying him as the one who committed the crime charged. This contention rests primarily on the inability of the complaining witness to positively identify Mentola even though she had ample opportunity to observe her assailants 'under favorable conditions'. Defendant argues that, if the conditions were favorable, Mrs. Robertson's general description of the four intruders was inadequate, and, if the conditions were unfavorable, her description should have been entirely excluded. In view of the terrifying circumstances under which Mrs. Robertson observed her assailants, it would be unreasonable to expect a complete and detailed description. It does not follow, however, that the general description which she was able to provide is incompetent. The cases cited by defendant for the proposition that a guilty verdict cannot be sustained where the identification testimony is less than positive, involve situations where such testimony is substantially uncorroborated by other evidence in the case. The testimony of the complaining witness here was materially supported by testimony of Gary Stark, which was, in turn, corroborated by evidence that certain items taken in the robbery were subsequently found to be in the possession of Durham and Tolbert."

Durham complains of the failure of the State to furnish the defendant prior to trial a list of witnesses to the "oral confession" made by Durham in front of Mary Garcia. Defendant filed a Motion for Discovery and Inspection on June 20, 1969. Request number 4 was for:

"The circumstances of any and all written and oral statements made by the Defendant and the witnesses who were present when statements were made, whether they be inculpatory or exculpatory."

On July 7, 1969, hearing was had on this motion and the orderd compliance by the State was made July 10, 1969. The State's answer to the above request was:

"In answer to #4 of Defendant's Motion for Discovery and Inspection, Durham made no statement."

The name of Mary Garcia was also furnished to the defendant at that time.

■■ Defendant claims that State's conduct violates ch. 38, par. 114–10, Ill. Rev. Stat., which provides that the State must produce written confessions and witnesses to oral confessions made to any *law enforcement officer* upon motion. This statute is not applicable as Durham's statements and offer to sell razors were made to a person who was not on law enforcement business.

■■■ Whether or not there was a violation of the trial court's pre-trial order to produce oral statements made by defendant is not here decided. Enforcement of its pre-trial orders is in the trial court's discretion. De-

fendant knew of Mary Garcia two weeks prior to trial and knew of the verbal admissions made in front of Mary Garcia two days before she was called as a witness. No motion for continuance or to suppress was made. The trial court handled the matter by refusing to permit the witness to testify as to the oral admission but permitting her to testify as to the attempted sale of the razors. This defendant fails to claim or show any prejudice arising from this sequence of events. He had time to interview witness Garcia before trial (and, in fact, defendant's investigator did so) and there is no violation of par. 114—10. Defendant does not claim surprise. The burden of showing surprise and prejudice is on defendant, *People v. Raby* (1968), 40 Ill.2d 392, 240 N.E.2d 595, and is not met here.

Defendant claims further that it was error to deny counsel the right to argue to the jury that Mary Garcia's statement was given to the police many months before trial but not given to defense until the day of trial. The trial court ruled that the court's reasons for allowing certain testimony of Mary Garcia were not to be argued to the jury. The court did not deny counsel the right to argument "based upon the facts, or upon legimate inferences deduced therefrom". *People v. Halteman* (1957), 10 Ill.2d 74, 139 N.E.2d 286, 293.

■■■ Defendant next asserts that the testimony of Gary Stark should not have been accepted and was an inadequate basis to support this defendant's conviction. We hold that this testimony was properly admitted, and was sufficient basis for conviction, especially when coupled with the other evidence presented. As the Supreme Court stated in *People v. Mentola, supra:*

"The testimony of an accomplice is necessarily received with caution, but such testimony, even if uncorroborated, is sufficient to warrant a conviction if it satisfied the trier of fact beyond a reasonable doubt. (*People v. Williams*, 19 Ill.2d 171, 176; *People v. Hermens*, 5 Ill.2d 277). Material corroboration or direct contradiction of an accomplice's testimony are entitled to great weight. (*People v. Baker*, 16 Ill.2d 364, 370; *People v. Hermens*, 5 Ill.2d 277, 286). The mutually supportive testimony of Mrs. Robertson and Gary Stark was uncontradicted, and, considering the entire record, we find the evidence clearly sufficient to justify the jury's verdict."

■■ Lastly, defendant claims that remarks of the prosecuting attorney in closing argument constituted a denial of his constitutionally protected privilege against self-incrimination. The remarks objected to are as follows:

"He (Gary Stark) told you quite honestly and truthfully what was not contradicted in any way. Just told you about his part in it and told you who was there. And that's uncontradicted testimony in this case. Jim Durham was there. Ernie Mentola was there."

These remarks were reviewed by the Court in *State v. Mentola, supra,* which held:

"We have held that an appropriate test in determining whether a defendant's right to remain silent has been violated is whether the reference in closing argument was 'intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify'. (*People v. Burton,* 44 Ill.2d 53, 56). It is 'permissible, however, for a prosecutor to comment of the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself'. (*People v. Mills,* 40 Ill.2d 4, 8; *People v. Norman,* 28 Ill.2d 77; *People v. Keagle,* 7 Ill.2d 408). Here, the prosecutor stated only that the testimony of Gary Stark as to what occurred and who was present on the night in question had not been contradicted; that reference did not exceed the limits of allowable comment."

For these reasons, we affirm.

Judgment affirmed.

EOVALDI and G. MORAN, JJ., concur.