(No. 37394.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES LATIMER, Plaintiff in Error.

*Opinion filed September 23, 1966.*

LEONARD O. ABRAMS, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and E. JAMES GILDEA, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Defendant, James Latimer, was found guilty by a jury in the criminal court of Cook County of the crime of murder and was sentenced to life imprisonment in the penitentiary. A writ of error was issued to review his conviction.

The defendant and his niece, Yvonne Thorpe, gave substantially similar accounts of the events leading up to the death of Willie Thorpe. According to their testimony, Willie Thorpe arrived at the apartment occupied by the defendant, his niece, and her two children between 10:00 o'clock and 10:30 o'clock P.M. on July 17, 1959. Defendant and Thorpe began shooting dice and for a while were joined by a third man, John Welch, who left while the game was still in progress. During the course of the game, after Welch had

left, defendant claimed to have won a dollar from Thorpe. Thorpe denied that he owed defendant any money, refused to pay him, and told defendant he would have to take the money from him. When Thorpe refused to buy a drink with the dollar, as defendant had suggested, defendant went to a cabinet in the kitchen, removed a sawed-off shotgun, loaded the gun, pointed it at Thorpe, and again demanded the money.

Defendant testified that he was just trying to frighten Thorpe, that he did not intend to shoot him, that he did not know whether the safety on the gun was set, and that "when I fired the gun, I honestly thought I had missed him."

Yvonne Thorpe testified that defendant obtained a gun from a cabinet in the kitchen, put a shell into the gun, and demanded a dollar from Willie Thorpe. She then became frightened, picked up her smallest child, and ran out the door while calling for her other child. When she got to the porch she heard a shot. She did not go back into the house to see what had happened.

The arresting officer testified that defendant orally admitted shooting Thorpe. The record shows that Thorpe died as a result of shock and hemorrhage due to a shotgun wound of the trunk involving the left lung, the spleen, and the stomach.

Two written statements, only one of which was signed by the defendant, were admitted into evidence. In the statements defendant admitted that he took the shotgun from the kitchen cabinet, loaded it, pointed the gun at Thorpe, demanded his money, and then fired the gun thereby killing Thorpe. No question as to the voluntariness of these confessions was raised.

Defendant first argued that the trial court erred in refusing to grant his request for continuance on the day his trial began. He was indicted July 30, 1959, arraigned August 6, 1959, and thereafter moved for and was granted ten continuances until August 9, 1960, the day his trial com-

menced. Defendant's original retained counsel withdrew from the case and the public defender was appointed on March 25, 1960.

Counsel for the defendant moved for a continuance for the reason that the defendant was not co-operating with him and would not disclose his defense. Defendant indicated to the court that he was not going to disclose his defense, if any, until he got on the stand, and that he could not co-operate with his counsel. However, he expressed no dissatisfaction with his appointed counsel and said that he was ready to go to trial. Defendant then requested the court to continue his case until Judge Gutknecht returned, indicating that this was his only reason for requesting a continuance. The court refused to grant a continuance and ordered the case to trial.

The granting of a continuance to permit preparation for a case is a matter resting within the sound judicial discretion of the trial court, and we will not disturb the court's ruling on review unless it is shown that the discretion has been abused. (*People* v. *Wilson,* 29 Ill.2d 82; *People* v. *Clark,* 9 Ill.2d 46.) A conviction will not be reversed unless it appears that the refusal of additional time in some manner embarrassed the accused in the preparation of his defense and thereby prejudiced his rights. (*People* v. *Wilson,* 29 Ill.2d 82; *People* v. *Solomon,* 24 Ill.2d 586.) In the *Solomon* case the public defender was appointed approximately two weeks before trial. The defendant there also failed to co-operate with his counsel. He moved for a continuance for the reason that he was not prepared to go to trial. In upholding the trial court's denial of the motion we said: "Since defendant utterly refused to co-operate with his counsel, he cannot now be heard to complain that the denial of the motion for continuance embarrassed his defense or prejudiced his rights." (24 Ill.2d 586, 590.) That case is controlling here. The motion for a continuance on the ground that defense counsel was not prepared as a result of defendant's failure

to co-operate was properly denied. The court's refusal to grant defendant's request for a continuance until another judge returned was not improper, since there was no showing that defendant could not get a fair trial from the trial judge.

Defendant next argues that the trial court erred in refusing to give manslaughter instructions to the jury and in failing to charge the jury with a manslaughter verdict. Defense counsel submitted instructions on manslaughter and on involuntary manslaughter. Apparently defendant contends that he killed Willie Thorpe "without any intent to do so, in the commission of an unlawful act, or a lawful act, which probably might produce such consequences, in an unlawful manner." Ill. Rev. Stat. 1959, chap. 38, par. 363.

It is an established rule that if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter, an instruction defining that crime should be given. (*People* v. *Canada,* 26 Ill.2d 491; *People* v. *Harris,* 8 Ill.2d 431; *People* v. *Brown,* 415 Ill. 23.) It is equally well established that where the evidence clearly demonstrates the killing was murder, a manslaughter instruction is erroneous. *People* v. *Marsh,* 403 Ill. 81; *People* v. *DeRosa,* 378 Ill. 557.

In the two statements made shortly after his arrest, defendant said that he pointed the gun at Thorpe, demanded his money, and then fired the gun. At the trial he testified that he did not intend to fire the gun but merely intended to frighten Thorpe, and that "when I fired the gun, I honestly thought I had missed him." Defendant argues that Thorpe's death was the result of an act done without due caution or circumspection and was an accident. His testimony at the trial was consistent with his confession, except only as it bore on intent. We have repeatedly held that it is not necessary to show that an accused has formed an intent to kill in order to justify a murder conviction. It is sufficient to show that he voluntarily and wilfully committed

an act, the natural tendency of which was to destroy another's life, with the intent being implied from the character of the act. (*People* v. *Winters,* 29 Ill.2d 74; *People* v. *Tillmas,* 26 Ill.2d 552.) Here the evidence shows that the defendant pointed the gun and fired at Thorpe. The record does not support his argument on appeal that the death was accidental.

In refusing to give the tendered instructions the trial court determined that there was no evidence from which the jury could reasonably have found the defendant guilty of manslaughter. We think the trial judge's refusal was justified.

Defendant's final contention concerns the admissibility of the confession. He argues that he was not advised of his constitutional rights to remain silent and to have an attorney represent him prior to questioning by the police and the assistant State's Attorney. For these reasons he contends the confessions were improperly admitted into evidence.

The recent Supreme Court ruling in *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, provides that "[P]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed," (16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) However, the guidelines set forth in *Miranda* are applicable only to those cases in which trial began after June 13, 1966, the date the decision was announced. (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1722; *People* v. *Williams,* Nos. 39515 and 39524.) Defendant's trial commenced on August 9, 1960. *Miranda* is inapplicable and since there is no showing that the confessions were not voluntarily made, they were properly admitted into evidence.

The judgment of conviction is affirmed.

*Judgment affirmed.*